UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CORNELIUS LORENZO WILSON            CIVIL ACTION

VERSUS

NO. 15-00680-JJB-RLB

DENNIS GRIMES, ET AL.

## **RULING**

Before the Court are two *Rule 12(B)(6) Motions* seeking dismissal of Plaintiff's *Complaint* and *Amended Complaint* filed by Defendant Dr. Rani Whitfield ("Dr. Whitfield" or "Whitfield").[1] Plaintiff Cornelius Lorenzo Wilson ("Wilson" or "Plaintiff") has filed an *Opposition to the Motion to Dismiss the Amended Complaint*.[2] Whitfield subsequently filed a *Reply*[3] to which Plaintiff filed a *Surreply*.[4] Additionally, Defendant Charlie H. Bridges, M.D. ("Dr. Bridges" or "Bridges"), has filed a *Motion to Dismiss Original Complaint and First Amended Complaint Pursuant to Federal Rule of Civil Procedure Rule 12(b)(6)*.[5] Wilson has filed an *Opposition*[6] to which Dr. Bridges has filed a *Reply*.[7] Also pending before the Court is Defendant Dr. Michael Stuart's ("Dr. Stuart" or "Stuart") *Motion to Dismiss Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(B)(6)*.[8] Plaintiff has filed an *Opposition*[9] and a separate *Motion to Strike*[10] Stuart's

---

[1] Doc. 30 (*Motion to Dismiss Pursuant to Federal Rule of Civil Procedure Rule 12(B)(6) by Defendant, Dr. Rani Whitfield*); and Doc. 39 (*Motion to Dismiss Amended Complaint Pursuant to Federal Rule of Civil Procedure Rule 12(B)(6) by Defendant, Dr. Rani Whitfield*).
[2] Doc. 44.
[3] Doc. 65.
[4] Doc. 71.
[5] Doc. 77.
[6] Doc. 94.
[7] Doc. 109.
[8] Doc. 86.
[9] Doc. 120.
[10] Doc. 130. (*Memorandum in Support* Under Seal [Doc. 128]).

1

*Motion*. Stuart has filed an *Opposition* to Plaintiff's *Motion to Strike*.[11] The Court's jurisdiction is founded upon 28 U.S.C. § 1331. There is no need for oral argument. For the following reasons, each of the Defendants' *Motions* and Plaintiff's *Motion to Strike* are granted in part and denied in part.

I.  **RELEVANT FACTS AND PROCEDURAL BACKGROUND**[12]

During his incarceration as both a pretrial detainee at East Baton Rouge Parish Prison ("EBRPP") and as a convicted inmate with the Louisiana Department of Corrections ("DOC") at numerous public and private facilities, Wilson claims that he received inadequate medical care for untreated and undiagnosed throat cancer that has resulted in the loss of his vocal chords and ongoing pain and suffering. Wilson has asserted various federal and state law claims against fourteen defendants, including private medical physicians Dr. Whitfield[13], Dr. Bridges[14], and Dr. Stuart[15] (collectively "Defendant Physicians"), arising out his medical treatment in his original *Pro Se Complaint*[16] and *First Amended Complaint*,[17] filed by counsel. Plaintiff's claims against these physicians concern the medical treatment he received while at EBRPP from February of 2015 through October of 2015.

---

[11] Doc. 113. (Under Seal).
[12] The relevant factual background is taken from the allegations in Wilson's *Complaint* and *First Amended Complaint*.
[13] Plaintiff alleges that Dr. Whitfield is a "private medical physician that was contracted to provide medical services to inmates at EBRPP." Doc. 36, p. 8, ¶22.
[14] Plaintiff alleges that Dr. Bridges is a "private medical physician that was contracted to provide medical services to inmates at EBRPP." Doc. 36, p. 7, ¶21.
[15] Plaintiff alleges that Dr. Stuart is a "private medical physician that was either employed by or contracted to provide medical services to inmates at EBRPP." Doc. 36, p. 8, ¶23.
[16] Doc. 1.
[17] Doc. 36.

A. Plaintiff's Factual Allegations against Dr. Rani Whitfield

In February of 2015, while he was being held at EBRPP as a pretrial detainee,[18] Wilson claims he began experiencing problems with his throat. In response to his medical requests, Wilson had three interactions with Dr. Whitfield over a two month time span. On February 24, 2015, Dr. Whitfield initially saw and treated Wilson for complaints of a sore and hoarse throat, sinus congestion, difficulty swallowing, and persistent cough.[19] Dr. Whitfield prescribed Wilson with a seven day treatment of Mucinex and the antibiotic Amoxicillin.[20] Wilson completed his medication, but claims it did not improve his condition. On March 18, 2015, Dr. Whitfield treated Wilson again for his throat.[21] During this visit, Wilson allegedly told Dr. Whitfield that the medications were not working and that he needed to see a doctor due to his continuing problems with his throat and voice. Dr. Whitfield diagnosed Wilson with a "hoarse pharyngitis cough" and ordered the following medications for Wilson: Cephalexin (antibiotic), the expectorant Mucinex, and the steroid Medrol.[22] Dr. Whitfield did not refer Wilson to an Ear, Nose, and Throat ("ENT") specialist or to a facility that could examine his vocal chords with a scope. Wilson claims that he took his medication until March 28, 2015, but his conditions did not improve. On April 29, 2015, Dr. Whitfield prescribed another round of Keflix to treat Wilson's sore throat, hoarse voice, persistent and productive cough, and difficulty swallowing.[23] Once again, Dr. Whitfield did not refer Wilson to an ENT or to a facility with a medical scope that could examine his vocal chords.

---

[18] Doc. 36, p. 1, ¶1.
[19] Doc. 36, p. 15, ¶48.
[20] Doc. 36, p. 15, ¶48.
[21] Doc. 36, p. 15, ¶51.
[22] Doc. 36, p. 16, ¶51.
[23] Doc. 36, p. 18, ¶63.

B. Plaintiff's Factual Allegations against Dr. Charles Bridges

While at EBRPP, Plaintiff claims that he was examined on two occasions by Dr. Bridges.[24] On April 24, 2015, Plaintiff complained about his sore throat, productive cough, hoarse throat, and difficulty swallowing. Dr. Bridges prescribed Plaintiff Mucinex, but did not refer him to an ENT or to a facility with a scope.[25] Dr. Bridges examined Plaintiff a second time on May 12, 2015.[26] During this exam, Plaintiff complained about his sore throat, his productive cough with blood, hoarse voice, and difficulty swallowing. Once again, Dr. Bridges did not refer Plaintiff to an ENT or outside facility with a scope.

C. Plaintiff's Factual Allegations against Dr. Michael Stuart[27]

In his *Amended Complaint*, Wilson alleges that he was examined by Dr. Stuart on four (4) different occasions while at EBRPP.[28] During an examination for another medical issue on March 21, 2015, Plaintiff claims that he told Dr. Stuart that his conditions regarding his throat, cough, and voice were not improving.[29] Nonetheless, Dr. Stuart did not refer Plaintiff to an ENT specialist or to a facility that could examine his vocal chords with a scope. Plaintiff does not allege being examined by Dr. Stuart again until August of 2015. On August 14, 2015, Plaintiff claims that although he had no voice, at the conclusion of the examination, Dr. Stuart did not refer him to an ENT specialist or to an outside facility with a scope.[30] When Dr. Stuart examined Plaintiff again two days later,[31] Plaintiff complained of his hoarse voice, productive cough, and sore throat.[32] At the end

---

[24] Doc. 36, p. 17, ¶60; p. 18, ¶67.
[25] Doc. 36, p. 17, ¶60.
[26] Doc. 36, p. 18, ¶67.
[27] Plaintiff named Dr. Stuart as a Defendant in his *Amended Complaint*.
[28] Doc. 36, p. 16, ¶53; p. 20, ¶79; p. 20, ¶80; and p. 20, ¶86.
[29] Doc. 36, p. 16, ¶53.
[30] Doc. 36, p. 20, ¶79.
[31] Plaintiff erroneously had August 16, 2016 in his *Amended Complaint*.
[32] Doc. 36, p. 20, ¶80.

4

of the examination, Dr. Stuart prescribed Plaintiff with the steroid Medrol.[33] However, he still did not refer Plaintiff to a specialist or an outside facility with a scope. Subsequently, on August 31, 2015,[34] Dr. Stuart conducted another examination of Plaintiff and recommended that he be referred to an ENT specialist.

    D. Plaintiff's Claims

Based upon the foregoing allegations, Wilson brings 42 U.S.C. Section 1983 claims against Dr. Whitfield, Dr. Bridges, and Dr. Stuart, in their official and individual capacities, for acting with deliberate indifference to his right to reasonable and adequate medical care in violation of the 8th and 14th Amendments to the United States Constitution. Wilson also asserts corresponding constitutional violations arising under the Louisiana Constitution, Article 1, §§ 2, 3, 7, 9, 20, against Dr. Whitfield, Dr. Bridges, and Dr. Stuart, and state law claims of medical malpractice, negligence, and negligent infliction of emotional distress ("NIED") or intentional infliction of emotional distress.

The Defendants now seek dismissal with prejudice of Wilson's 42 U.S.C. § 1983 claims, and dismissal of Wilson's medical malpractice claims without prejudice on the grounds of prematurity. Dr. Stuart also seeks dismissal of Plaintiff's claims as premature for failing to exhaust his administrative remedies.

## II. LAW AND ANALYSIS

    A. Rule 12(B)(6) Standard

At the motion to dismiss stage, the Court must accept the well-plead factual allegations in the complaint as true.[35] The Court views the complaint in the light most

---

[33] Doc. 36, p. 20, ¶80.
[34] Doc. 36, p. 21, ¶82. Plaintiff erroneously alleges this examination occurred on August 31, 2016 in his *Amended Complaint*.
[35] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).

5

favorable to the plaintiff, resolving all doubts in his favor.[36] However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[37] The Court will not "strain to find inferences favorable to the plaintiff."[38] If the facts as plead allow the Court to conclude that plaintiff's claims for relief are "plausible," the motion must be denied.[39] To satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully."[40] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[41]

B. Prematurity Arguments

1. Exhaustion of Administrative Remedy Procedures

Dr. Stuart argues that Plaintiff's claims should be dismissed for failure to exhaust his administrative remedies pursuant to La. R.S. 15:1171.[42] Pursuant to 42 U.S.C. § 1997e, Wilson was required to exhaust administrative remedies available to him at the prison prior to commencing a civil action in this Court with respect to prison conditions.[43] This provision is mandatory and applies broadly to "all inmate suits about prison life."[44] Additionally, a prisoner must exhaust administrative remedies by complying with the

---

[36] *Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988).
[37] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[38] *Taha v. William Marsh Rice Univ.*, Civ. Action No. H-11-2060, 2012 WL 1576099, *2 (S.D.Tex. May 3, 2012)(quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004)).
[39] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[40] *Iqbal*, 556 U.S. 678 (citing *Twombly*, 550 U.S. at 556).
[41] *Id.*
[42] Dr. Stuart is the only Defendant Physician to make this specific argument.
[43] 42 U.S.C. § 1997(e) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."
[44] *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

applicable prison grievance procedures before filing a lawsuit relative to prison conditions.[45]

Wilson has alleged that he submitted complaints that comprise the claims of the instant litigation through the ARP process while detained at EBRPP, and that he has exhausted all administrative remedies available to him through the ARP process.[46] Wilson attached a copy of Prison Medical Services Medical Grievance Reply, No. 15-0127, dated April 6, 2015 to his *Complaint*.[47] Although the actual grievance is not available for review, it appears from the Grievance Reply that Wilson was complaining of the medical treatment he had received prior to April 6, 2015 by medical staff at EBRPP and that he thought he needed to be hospitalized for his voice. Wilson has also alleged that he discussed his throat and voice problems with Dr. Stuart on March 21, 2015, prior to the date the Grievance Reply was completed. Accepting the allegations of the *Complaints* as true, the Court finds Wilson has sufficiently plead that he exhausted his claims through EBRPP's ARP process so as to survive a Rule 12(b) challenge. Accordingly, Dr. Stuart's *Motion* shall be denied on this ground.

2. Medical Malpractice Claims

Each of the Defendant Physicians argues that Plaintiff's state law medical malpractice claims are premature because they have not been presented to a Medical Review Panel as required by Louisiana law. The Plaintiff does not deny this point.[48] With regard to any of the medical malpractice claims asserted against Dr. Whitfield, Dr.

---

[45] *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004).
[46] Doc. 1, p. 3, Section II(C); Doc. 36, p.31, ¶140.
[47] Doc. 1-1, p. 3.
[48] The Plaintiff does argue that the Court should stay the matter pending the outcome of the Medical Review Panel instead of the dismissing the claims. Because the Court ultimately finds that the Plaintiff's deliberate indifference claims must be dismissed, there is no need to stay the case pending the outcome of the Louisiana Medical Review Panel.

Bridges, and Dr. Stuart, the Court finds such claims are premature, as each of these Defendants is a qualified healthcare provider[49] pursuant to Louisiana law and the claims have not been presented to a Medical Review Panel as required by La. R.S. 40:1231.8. Accordingly, each of the Defendants' *Motions* shall be granted on this ground, and the state law medical malpractice claims against Dr. Whitfield, Dr. Bridges, and Dr. Stuart shall be dismissed, without prejudice.

C. Plaintiff's *Motion to Strike* Dr. Stuart's Rule 12(B)(6) Motion

Plaintiff has requested that the Court strike Dr. Stuart's *Motion to Dismiss* pursuant to Rule 12(f) for improperly disclosing confidential health information that is irrelevant to Plaintiff's *Complaint*.[50] In the alternative, Plaintiff requests that Dr. Stuart's *Rule 12(b)(6) Motion* be filed under seal. Dr. Stuart disagrees arguing that the information is relevant to establish the basis of his treatment of Wilson, and to discern that treatment from the alleged ineffective treatment of Wilson's throat condition. Stuart further argues that because Plaintiff has asserted claims of malpractice against him, Wilson has waived any health care provider-patient privilege. Dr. Stuart also points to an allegation in Plaintiff's *Complaint* that specifically references the other type of medical treatment Stuart provided to him.

Rule 12(f) of the Federal Rules of Civil Procedure provides that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[51] Although it is within the sound discretion of the court to grant a motion to strike, that authority should be exercised with caution.[52] A motion to strike

---

[49] Doc. 30-2 and Doc. 39-2; Doc. 77-1; and Doc. 86-2.
[50] Doc. 130.
[51] Fed. R. Civ. P. 12(f).
[52] *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012).

based on immateriality should only be granted when the challenged allegations "can have no possible bearing upon the subject matter of the litigation."[53] "Both because striking a portion of a pleading is a drastic remedy, and because it often is sought by a movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted."[54] "Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation. If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied."[55]

Initially, the Court finds that Plaintiff has failed to show that the challenged information will have no bearing upon this case. For purposes of the medical malpractice claim, Dr. Stuart is only being sued for his treatment of Wilson's throat. Therefore, the Court agrees with Dr. Stuart that the challenged information is relevant so that it may be discerned from the alleged ineffective treatment upon which Wilson's claims are based. Further, at least one federal court within this circuit has found that when a plaintiff "is the party who placed his medical conditions at issue in his suit, he cannot maintain privilege under the Health Insurance Portability and Accountability Act of 1996."[56] Nonetheless, as a practical matter, when considering a motion to dismiss, the court "must limit [its] inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint."[57] Therefore, while the additional information included by

---

[53] *Sadler v. Benson Motors Corp.*, Civ. A. No. 97-1083, 1997 WL 266735, *1 (E.D.La. May 15, 1997)(citations omitted).
[54] *F.D.I.C. v. Niblo*, 821 F.Supp. 441, 449 (N.D. Tex. 1993)(citing *Augustus v. Bd. of Public Instruction of Escambia County, Fl*, 306 F.2d 862, 868 (5th Cir. 1962)).
[55] *Mercado v. Dallas County, Texas*, Civil Action No. 3:15-CV-3481-D, 2017 WL 169102, *16 (N.D.Tex. Jan. 17, 2017)(quoting *Pan Am. Life Ins. Co. v. Blanco*, 311 F.2d 424, 428 n. 13 (5th Cir. 1962)(citation omitted)).
[56] *Roberts v. River City Care Center*, 13-CA-670, 2014 WL 12540478, *2 (W.D.Tex. Feb. 14, 2014).
[57] *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

Dr. Stuart in his *Motion* may be relevant to the case at hand, it cannot be considered by the Court in ruling on the *Motion* as it was not a fact alleged in either of the *Complaints* or any of the documents attached to them. Therefore, the Court will not strike Dr. Stuart's pleading, but rather order that Dr. Stuart's *Motion* be filed under seal. Accordingly, Plaintiff's *Motion to Strike* shall be granted in part, and denied in part.

D. Rule 12(b)(6) Dismissal of Plaintiff's Deliberate Indifference Claims

In response to Wilson's claims of deliberate indifference to his medical needs, each of the Defendant Physicians makes two arguments. First, the Defendant Physicians argue that they are neither state actors nor acting under color of state law, and therefore, Wilson has failed to state a viable claim upon which relief may be granted.[58] In the alternative, the Defendant Physicians each argue that even if they were state actors, they would each be entitled to qualified immunity because Wilson has not alleged facts showing they were deliberately indifferent to a serious medical need. Because Plaintiff has alleged that each of the Defendant Physicians were state actors at the time of the alleged constitutional violations,[59] the Court denies the Defendant Physicians' *Motions to Dismiss* on this ground. However, the Court shall proceed with the Defendant Physicians' alternative argument and assess whether as state actors they are entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or

---

[58] In his first *Motion to Dismiss*, Dr. Whitfield also argued that he is not a state actor because he is not governed by La. R.S. 40:1237.1, Louisiana's statute governing medical malpractice actions against state employees. Doc. 30-1, pp. 8-9.

[59] The Court also believes that a much more fact-intensive and evidentiary-based analysis would be required in order to determine whether the Defendant Physicians are state actors for purposes of 42 U.S.C. § 1983, which would be inappropriate at the Rule 12(b)(6) stage.

constitutional rights of which a reasonable person would have known.'"[60] In assessing whether an individual is entitled to qualified immunity, the Court applies a two-part test to determine "(1) whether the defendant's alleged action is a violation of the plaintiff's constitutional rights;" and (2) if so, "whether the defendant's actions were objectively unreasonable in light of the clearly established law at the time of the conduct in question."[61] The Defendant Physicians contend that construing the allegations in the *Complaints* in the light most favorable to Wilson, each of their alleged actions did not amount to a constitutional violation. For the following reasons, the Court agrees.

Wilson claims that Dr. Whitfield, Dr. Bridges, and Dr. Stuart were deliberately indifferent to his serious medical needs by denying him reasonable and adequate medical care while Wilson was both a pretrial detainee and convicted prisoner at EBRPP. "Pretrial detainees and convicted prisoners … look to different constitutional provisions for their respective rights to basic needs such as medical care and safety."[62] While "[t]he constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment, and with a relatively limited reach, from substantive due process," the "rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth

---

[60] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).
[61] *Deal v. Dept. of Corrections*, Civ. Action No. 16-61, 2016 WL 3580671, *3 (M.D.La. June 28, 2015)(quoting *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)).
[62] *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996). See also, *Hanson v. Richardson*, No. 2:06-CV-0178, 2008 WL 818893, *3 (N.D. Tex. Mar. 27, 2008)("With respect to the differing sources of protection for pretrial detainees and convicted inmates, the Fifth Circuit has recognized that the distinction as to medical care due to a pretrial detainee, as opposed to a convicted inmate, may be a distinction without difference, because if an act or omission violates the Eighth Amendment protection against deliberate indifference to a serious medical need, it will certainly violate a detainee's Fourteenth Amendment protections.").

Amendment."[63] Ultimately, "[t]here is no significant distinction, however, between pretrial detainees and convicted inmates when the denial of medical care is at issue."[64]

Because Wilson has complained of one or more particular acts or omissions by prison health care providers, his claims are characterized as episodic acts or omissions.[65] Thus, whether Wilson was a pretrial detainee or convicted prisoner, the Court analyzes his claim under the deliberate indifference standard.[66] Deliberate indifference is an "extremely high standard to meet",[67] one that has been equated to "'[s]ubjective recklessness,' as used in the criminal law."[68] Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[69] "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances."[70] A prisoner who alleges that he should have received additional treatment "is a classic example of a matter for medical judgment."[71] To establish deliberate indifference a plaintiff must show that an official "refused to treat him, ignored his complaints,

---

[63] *Id.* (internal citations omitted).
[64] *McCarty v. Zapata County*, 243 Fed. Appx. 792, 2007 WL 1191019, *1 (5th Cir. Apr. 20, 2007)(citing *Gibbs v. Grimmette*, 254 F.3d 545, 547 (5th Cir. 2001)).
[65] *Hare*, 74 F.3d at 645.
[66] *McCarty*, 2007 WL 1191019, *1; *Id.* at 647-48.
[67] *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).
[68] *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)(citing *Farmer v. Brennan*, 511 U.S. 825, 838-40 (1994)).
[69] *Farmer*, 511 U.S. at 838.
[70] *Rogers v. Boatright*, 709 F.3d 403, 409-10 (5th Cr. 2013)(quoting *Gobert v. Caldwell*, 463 F.3d 359, 346 (5th Cir. 2006)(quoting *Farmer*, 511 U.S. at 847)).
[71] *Domino*, 239 F.3d at 756 (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)).

intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[72]  Additionally, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting harm.[73]

Accepting Wilson's allegations as true, the Court finds that he has failed to state a claim of deliberate indifference to his serious medical needs against the Defendant-Physicians.  Based on the allegations in his *Complaints*, Wilson did not allege that any of the Defendant Physicians were aware of a substantial risk of harm to him, or that they purposely denied him treatment, ignored his medical complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would evince a wanton disregard for any serious medical need.  According to the allegations, Dr. Whitfield examined Wilson on three occasions for his complaints related to a sore and hoarse throat accompanied with congestion, cough, and difficulty swallowing. During each visit, Dr. Whitfield prescribed Wilson various antibiotics and decongestants.  Based on these allegations, it appears that Dr. Whitfield was quite attentive to Wilson's medical needs.  Similarly, on one of the two occasions that Dr. Bridges examined Wilson, he was prescribed Mucinex for his medical condition.  Likewise, Plaintiff's allegations indicate that Dr. Stuart also took Wilson's medical needs seriously.  In August of 2015, Dr. Stuart examined Plaintiff three times.  During his second visit, Dr. Stuart prescribed Wilson a steroid to address his medical complaints.  When Dr. Stuart re-examined Wilson approximately 15 days later, Dr. Stuart recommended that Plaintiff be referred to an ENT.

---

[72] *Id.* (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).
[73] *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

It appears to the Court that Wilson's main complaint with Dr. Whitfield, Dr. Bridges, and Dr. Stuart is that he disagreed with the medical treatment he received and believed that he should have been referred to a medical specialist, specifically an ENT, or a clinic with a scope to evaluate his throat, earlier than such a referral was made. Plaintiff attempts to buttress his position with the conclusory allegation that Whitfield allegedly told him on one occasion that he needed to get his throat scoped but the EBRPP did not have the necessary equipment. As previously discussed, however, Wilson's disagreement with a course of a medical treatment alone does not amount to deliberate indifference.[74] As this Court has previously explained, "[a] decision to refer an inmate for additional treatment, tests or evaluation is a matter of professional judgment that the courts will not normally second-guess in the context of a claim of deliberate medical indifference."[75] While misdiagnosis or incorrect treatment might in some instances amount to negligence or medical malpractice, the Fifth Circuit has explained that "negligent medical care does not constitute a valid section 1983 claim."[76] Rather, such claims of negligence or malpractice present issues of state law to be addressed by state courts.[77] In this case, Wilson's allegations clearly sound in medical malpractice and do not amount to an Eighth Amendment constitutional violation. Additionally, without a viable claim of deliberate

---

[74] *Gobert*, 463 F.3d at 346. *See also*, *Norton*, 122 F.3d at 292 (prisoner's disagreement with prison officials regarding medical treatment insufficient to establish an unconstitutional denial of medical care).
[75] *Auguillard v. Toce*, Civ. Action No. 14-394, 2015 WL 5093842, *5 (M.D.La. Aug. 27, 2015)(citing *Cuellar v. Livingston*, 321 Fed. Appx. 373, 374 (5th Cir. 2009)). *See also*, *Estelle*, 429 U.S. at 107 (The "question of whether … additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment" and is not actionable under Section 1983.)
[76] *Mendoza*, 989 F.2d at 195.
[77] *Coleman v. Terrebonne Parish Criminal Justice Complex*, Civ. Action No. 13-4325, 2013 WL 6004051, *4 (E.D.La. Nov. 13, 2013).

indifference, any Eighth or Fourteenth Amendment claims premised on a delay in medical care must also fail.[78]

The Court further finds the jurisprudence relied on by Plaintiff to be factually distinguishable from his case.[79] For instance, in *Rodrigue v. Morehouse Detention Ctr*,[80] a Licensed Practical Nurse ("LPN") failed to perform any physical examination of the plaintiff-inmate or refer him to a physician after he made persistent complaints of "extreme abdominal pain and bilious vomiting over a week."[81] The *Rodrigue* court found that the LPN knew that inmate's complaints showed he was at risk of serious harm—acute appendicitis—and yet still failed to refer the plaintiff to a physician, who could make a medical diagnosis. The Court stated that "[w]hen a gatekeeper to emergency care, like [the LPN], knowingly disregards a prisoner's complaints, she acts with deliberate indifference to that prison[er]'s medical needs."[82] In its reasoning, the *Rodrigue* court further distinguished itself from those cases "where an inmate [sees] a physician and that physician [makes] an unfortunately incorrect medical decision."[83] In contrast to the plaintiff in *Rodrigue*, Wilson was not in a similar emergency care situation. Further, Wilson has alleged that he was examined and treated by several physicians on several occasions. Ultimately, Wilson's case would be more akin to the very case the *Rodrigue* court distinguished itself from—one where a physician makes an incorrect medical

---

[78] *Easter*, 467 F.3d at n. 2 (citing *Mendoza*, 989 F.2d at 195). *See also*, *Garza v. Harris Cty., Tex.*, 2011 WL 3925020, *7 (S.D.Tex. Sept. 7, 2011).
[79] Plaintiff's reliance on *Bektic-Marrero v. Goldberg*, 850 F.Supp.2d 418 (S.D.N.Y. Mar. 7, 2012) is also misplaced. The only issue the *Bektic-Marrero* court considered on Rule 12(b)(6) grounds was whether the defendants were state actors.
[80] *Rodrigue v. Morehouse Detention Ctr.*, Civ. Action No. 09-985, 2012 WL 4483438, *6 (W.D.La. Sept. 28, 2012).
[81] *Id.*
[82] *Id.*
[83] *Id.*

decision. For those reasons previously discussed herein, even if Dr. Whitfield, Dr. Bridges, or Dr. Stuart made incorrect medical decisions—which the Court does not find today—negligent medical care is not a constitutional violation.[84]

For the foregoing reasons, the Court finds that Wilson has failed to allege facts showing that Defendants Whitfield, Bridges, and Stuart acted with deliberate indifference toward his serious medical needs in violation of the Eighth or Fourteenth Amendments. Because Wilson has not satisfied the first prong of the qualified immunity analysis, each of the Defendant Physicians are entitled to have the deliberate indifference claims against them dismissed based on qualified immunity, and each of their *Motions* shall be granted on this ground.

E. Leave to Amend

In each of his *Oppositions*, Wilson seeks leave to remedy the pleading deficiencies as to the Defendant Physicians. A district court has discretion to grant a motion to amend, and leave to amend shall be granted when justice so requires.[85] However, a district court does not abuse its discretion when it denies leave to amend because the amendment would be futile.[86] Wilson has already been permitted file an *Amended Complaint*, which was prepared by counsel.[87] The 42 page *Amended Complaint* details with great specificity the instances in which Dr. Whitfield, Dr. Bridges, and Dr. Stuart each examined and treated Wilson for his medical complaints while housed at EBRPP. The Court also finds that the case cited by Plaintiff to support his motion to amend is factually and procedurally distinguishable from the instant matter. In *Public Health Equipment & Supply Co., Inc., v.*

---

[84] *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999).
[85] Fed. R. Civ. P. 15(a)(2).
[86] *Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).
[87] Doc. 36.

*Clarke Mosquito Control Products, Inc.*,[88] the district court denied plaintiff's first motion to amend and, unlike Wilson, the plaintiff "laid out the grounds on which the amendment should be permitted."[89] Therefore, the Court finds that permitting Wilson another opportunity to amend his *Complaint* to remedy the pleading deficiencies at this stage would be futile.[90] Accordingly, Wilson's request to amend his *Complaint* is hereby denied.

F. Supplemental Jurisdiction over Remaining State Law Claims

A district court may decline to exercise supplemental jurisdiction over the plaintiff's state law claims if they raise novel or complex issues of state law, if the claims substantially predominate over the claim over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.[91] In the instant case, the Court has dismissed all claims over which it had original jurisdiction as to Dr. Whitfield, Dr. Bridges, and Dr. Stuart. Therefore, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims of negligence and intentional and/or negligent infliction of emotional distress asserted against Dr. Whitfield, Dr. Bridges, and Dr. Stuart. These claims shall be dismissed without prejudice.

---

[88] *Public Health Equipment & Supply Co., Inc., v. Clarke Mosquito Control Products, Inc.*, No. 10-50193, 410 Fed.Appx. 738 (5th Cir. 2010).
[89] *Id.* at 740-41.
[90] *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)("Denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile.")(quoting *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)).
[91] 28 U.S.C. § 1367.

## IV. CONCLUSION

For the foregoing reasons, Dr. Rani Whitfield's *Motions to Dismiss* are hereby GRANTED IN PART, and DENIED IN PART,[92] Dr. Charles Bridges' *Motion to Dismiss Original and First Amended Complaint Pursuant to Federal Rule of Civil Procedure Rule 12(b)(6)* is hereby GRANTED IN PART, and DENIED IN PART;[93] and Dr. Charles Stuart's *Motion to Dismiss Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(B)* is hereby GRANTED IN PART and DENIED IN PART.[94]

It is hereby ordered that Plaintiff Cornelius Lorenzo Wilson's 42 U.S.C. § 1983 deliberate indifference claims brought pursuant to the Eighth and Fourteenth Amendments against Defendants, Dr. Whitfield, Dr. Bridges, and Dr. Michael Stuart are hereby dismissed with prejudice because each of the Defendants is entitled to qualified immunity.

It is further ordered that Plaintiff Cornelius Lorenzo Wilson's state law medical malpractice claims, negligence claims, and intentional/negligent infliction of emotional distress claims against Defendants, Dr. Whitfield, Dr. Bridges, and Dr. Michael Stuart are hereby dismissed without prejudice.

It is further ordered that Plaintiff Cornelius Lorenzo Wilson's *Motion to Strike* is GRANTED IN PART, and DENIED IN PART.[95] The *Motion* is denied as to striking Defendant Dr. Stuart' *Motion to Dismiss*. The *Motion* is granted as to sealing Dr. Stuart's *Motion to Dismiss*. Accordingly, the Clerk of Court is hereby instructed to file Dr. Stuart's

---

[92] Doc. 30 and Doc. 39.
[93] Doc. 77.
[94] Doc. 86.
[95] Doc. 130.

18

*First Motion to Dismiss Amended Complaint Pursuant to Federal Rule of Civil Procedure Rule 12(b)(6)* and *Memorandum in Support* of said *Motion* with attachments under seal.[96]

It is further ordered that Plaintiff Cornelius Lorenzo Wilson's second request for leave to amend his *Complaint*, is hereby DENIED.

Signed in Baton Rouge, Louisiana, on May 31, 2017.

**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[96] Doc. 86.